UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| RODRIGO CARVALHO DE ANDRADE,<br>    Petitioner,<br><br>    v.<br><br>MICHAEL NESSINGER, *Warden of Wyatt Detention Facility*; DAVID T. WESLING, *Boston Acting Field Office Director, U.S. Immigration and Customs Enforcement*; TODD LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*; and MARKWAYNE MULLIN, *U.S. Secretary of Homeland Security*,<br>    Respondents. | No. 26-cv-183-JJM-AEM |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Rodrigo Carvalho de Andrade is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island.  ECF No. 1.  He brings this habeas petition under 28 U.S.C. § 2241, challenging his detention as unlawful and seeking immediate release from ICE custody as well as a bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a).  *Id.* at 13.

This type of petition is not uncommon these days.  Like countless others, Mr. Carvalho challenges ICE's policy of subjecting thousands of noncitizens—even those who have no criminal records and who have been living in the United States for years

and decades—to mandatory detention under 8 U.S.C. § 1225(b) without the opportunity to seek release on bond. The overwhelming majority of courts—this Court included—have found this policy to be unlawful. *See, e.g.*, *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States"); *Morales v. Hyde*, No. 26-cv-093-JJM-PAS, 2026 WL 508811, at *1 (D.R.I. Feb. 24, 2026) (collecting dozens of similar habeas cases from the District of Rhode Island).[1]

Nevertheless, the Government returns again and again to this Court and, much like Sisyphus, continues to push the boulder of its argument uphill with the hope that the Court will eventually side with ICE's position.[2] As before, this Court declines to do so. Accordingly, for the reasons stated below, the Court GRANTS Mr. Carvalho's petition and ORDERS his immediate release.

---

[1] The Court is aware of the Eighth and Fifth Circuit decisions that are to the contrary. *See Avila v. Bondi*, No. 25-3248, --- F.4th ----, 2026 WL 819258 (8th Cir. Mar. 25, 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). However, those decisions are not binding on this Court, and the Court does not find their reasoning to be persuasive. The Court is instead persuaded by the Seventh Circuit's position on the issue. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that the Government was unlikely to succeed on the merits of its argument that 8 U.S.C. § 1225(b) permits the mandatory detention of any noncitizen who is unlawfully already in the United States).

[2] In Greek mythology, Sisyphus is condemned to eternally roll a boulder up a steep hill, only to have it roll down each time he reaches the top of the hill. *See Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900, at *2 (E.D. Pa. Dec. 22, 2025) (Beetlestone, C.J.) (equating the Government's unwavering position on mandatory detention to Sisyphus having to continuously roll his boulder uphill) (citing Albert Camus, *The Myth of Sisyphus* (1942)).

## I.    BACKGROUND

Mr. Carvalho is a citizen of Brazil.  ECF No. 1 at 1.  According to his petition, he fled his home country "following threats against him for resisting gang recruitment and multiple incidents of violent victimization by criminals."  *Id.*

Mr. Carvalho entered the United States without inspection on or about March 4, 2021.  *Id.* at 2.  U.S. Border Patrol ("USBP") officers apprehended Mr. Carvalho at the border and arrested him shortly thereafter.  *Id.*; *see also* ECF No. 7-1 at 3.  He was later processed for expedited removal.  ECF No. 7-1 at 3.  Mr. Carvalho, however, expressed a fear of returning to Brazil.  *Id.*

On or about March 10, 2021, ICE released Mr. Carvalho from detention on an Order of Release on Recognizance.[3]  ECF No. 1-4 at 1 (displaying ICE's order).  He was placed in an Alternatives to Detention ("ATD") program, which included regular check-ins with ICE.  ECF No. 1 at 9.  Shortly after his release, Mr. Carvalho filed a timely application for asylum and withholding of removal,[4] which remains pending at this time.  *See* ECF No. 1-3 at 1.  Mr. Carvalho now resides in Massachusetts with his partner and their three-year-old son, who is a U.S. citizen.  ECF No. 1 at 9.

---

[3] This is also referred to as a Form I-220A.  ECF No. 1-4 at 1-3; *see* U.S. Immigration and Customs Enforcement, Dep't of Homeland Sec., Order of Release on Recognizance, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf [https://perma.cc/SW7M-ZRLT] (last visited Apr. 6, 2026) (displaying Sample Form I-220A).

[4] A noncitizen seeking to apply for asylum must typically submit their asylum application within one year of arriving in the United States.  8 U.S.C. § 1158(a)(2)(B)).  Here, there is no dispute that Mr. Carvalho filed his application within one year of his arrival.  Specifically, he arrived in the United States on or about March 4, 2021, and U.S. Citizenship and Immigration Services ("USCIS") notified him that it had received his asylum application on November 19, 2021.  *See* ECF No. 1-3 at 1.

On March 25, 2026, more than five years after he was released from ICE custody, Mr. Carvalho reported for his scheduled check-in with ICE at the agency's Boston Field Office in Burlington, Massachusetts. *Id.* at 1. During this appointment, ICE officers arrested and re-detained him. *Id.* Mr. Carvalho was later transferred to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he currently remains detained. *Id.* at 2.

Mr. Carvalho filed the present petition on March 30, 2025, seeking release from ICE custody or, in the alternative, a bond hearing. ECF No. 1 at 13. The Government opposes the petition and argues that it should be denied. ECF No. 7 at 1-2.

## II.    DISCUSSION

The Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *Gonzalez Lopez v. Wesling*, No. 26-cv-047-JJM-AEM, --- F. Supp. 3d ----, 2026 WL 309607, at *1 (D.R.I. Feb. 5, 2026); *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). The question in this case then is the following: Which provision governs Mr. Carvalho's detention?

### A.    Legal Framework

#### 1.    Detention Authority Under Section 1225

8 U.S.C. § 1225 of the INA ("Section 1225") applies to "applicants for admission" who are generally encountered "at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). An "applicant for admission"

is defined as a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Id.* (quoting 8 U.S.C. § 1225(a)(1)).

The Supreme Court has recognized two types of applicants for admission: "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* As relevant here, noncitizens covered by Section 1225(b)(1) are normally subject to expedited removal proceedings, meaning they are "ordered removed 'without further hearing or review.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

Section 1225(b)(1) primarily applies to those noncitizens who are deemed "inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i) (citing 8 U.S.C. §§ 1182(a)(6)(C), (a)(7)). It also applies to certain other noncitizens designated by the Secretary of the Department of Homeland Security ("DHS") in her discretion.[5] *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). One such designation extended expedited removal to "persons who, within fourteen days of arriving in the United States, are encountered within 100 air miles of a land border." *Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at \*2 (D.C. Cir. Nov. 22, 2025) (per curiam); *see* Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004)). By contrast, Section 1225(b)(2) "serves as a catchall provision that applies to

---

[5] Though the statute refers to the "discretion of the Attorney General," this authority now belongs to the DHS Secretary. *Thuraissigiam*, 591 U.S. at 109 n.3 (explaining that 6 U.S.C. § 251(2) transferred the authority over "[t]he detention and removal program" to DHS).

all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. §§ 1225(b)(2)(A), (B)).

Both Section 1225(b)(1) and Section 1225(b)(2) authorize the detention of certain applicants for admission. *Id.* Detention under these statutory provisions is mandatory, *id.* at 299, 302, and they do not guarantee any right to a bond hearing. *Id.* at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). However, this detention authority is limited in scope and applies specifically to those noncitizens "*seeking admission* into the country under §§ 1225(b)(1) and (b)(2)." *Id.* at 289 (emphasis added). In addition, despite its mandatory detention provisions, Section 1225(b) provides a narrow exception by which an applicant for admission "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id.* at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R §§ 212.5(b), 235.3.

### 2. Detention Authority Under Section 1226

A separate provision of the INA, 8 U.S.C. § 1226 ("Section 1226"), authorizes the Government "to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings . . . ." *Jennings*, 583 U.S. at 289 (emphasis added). This provision is often referred to as the "discretionary detention provision" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the [DHS Secretary][6] . . . pending a decision on whether the

---

[6] Again, the Attorney General is substituted for the DHS Secretary.

[noncitizen] is to be removed from the United States."    8 U.S.C. § 1226(a); *see*

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021).[7]

Noncitizens detained under Section 1226(a) may be released on bond or

conditional parole.  8 U.S.C. § 1226(a)(2).  Indeed, Section 1226(a) detainees have a

due process right to request a bond hearing at the outset of their detention at which

the burden is on the Government to prove that their detention must continue either

because they pose a danger to the community by clear and convincing evidence or

because they pose a flight risk by a preponderance of the evidence.  *Hernandez-Lara*

*v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *see also Jennings*, 583 U.S. at 306 (citing 8

C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

### B.    Mr. Carvalho's Detention

Here, the Government asserts that Mr. Carvalho is subject to mandatory

detention under Section 1225(b)(1) and is not entitled to a bond hearing.  ECF No. 7

at 1-2.  This is in spite of the fact that Mr. Carvalho has been peacefully living and

working in the United States since ICE released him from detention five years.

According to the Government, the Court should pay no mind to the circumstances

surrounding Mr. Carvalho's Order of Release on Recognizance, and its attention

should instead be on whether he remains an "applicant for admission."  ECF No. 7

at 4 ("The statutory scheme instead turns on the individual's status as an applicant

---

[7] There is another provision within Section 1226, 8 U.S.C. § 1226(c), that mandates the detention of noncitizens who have been convicted of specified crimes. *Hernandez-Lara*, 10 F.4th at 35.  However, this provision is not at issue here because Mr. Carvalho has not been convicted of a crime.

for admission—not on whether DHS temporarily released him."). This position is not well taken—the Court cannot simply focus on one while ignoring the other. In fact, the Order of Release on Recognizance provides critical insight into whether ICE has the authority to re-detain Mr. Carvalho at all.

As a preliminary matter, there is no dispute that Mr. Carvalho entered the country without inspection on or about March 4, 2021. ECF No. 1 at 2; ECF No. 7-1 at 2. He was arrested and detained by USBP officers shortly after his entry and, pursuant to the DHS Secretary's designation, Mr. Carvalho was deemed "amenable to expedited removal . . . because he was apprehended within fourteen days of his illegal entry into the United States and within one hundred air miles of a United States land border." ECF No. 7-1 at 3; *see Make the Road N.Y.*, 2025 WL 3563313, at *2. Thus, at the time of his entry, Mr. Carvalho's status was that of an applicant for admission who was lawfully held by ICE under Section 1225(b)(1). *Jennings*, 583 U.S. at 287.

On or about March 10, 2021, Mr. Carvalho's circumstances changed. He was released by ICE on an Order of Release on Recognizance. This was done "[i]n accordance with section 236 [Section 1226] . . . provided [he] complied with [specified] conditions." ECF No. 1-4 at 1. The Government submits that Mr. Carvalho's "release on recognizance is properly understood as analogous to parole." ECF No. 7 at 4. But recall that there are two different types of parole, each contained within a distinct INA statutory provision. *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 330 (D. Mass.

8

2025) ("Notably, conditional parole under § 1226(a) is distinct from 'humanitarian' or 'significant public benefit' parole into the United States under § 1182(d)(5)(A).").

Conditional parole under Section 1226(a) "'releases a non-citizen already in the country from domestic detention' pending the normal removal process." *Id.* at 330-31 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)). By contrast, humanitarian or significant public health parole—which is the limited exception to Section 1225(b)'s mandatory detention provision—"'permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen' as an applicant for admission in expedited removal proceedings." *Id.* at 331 (quoting *Martinez*, 792 F. Supp. 3d at 215 (citing 8 U.S.C. § 1182(d)(5)(A))).

Importantly, Mr. Carvalho's Order of Release on Recognizance expressly references Section 1226(a), not Section 1225(b). *See* ECF No. 1-4 at 1 ("In accordance with section 236 [Section 1226] . . . you are being released on your own recognizance provided you comply with [specified] conditions."). His order then is properly understood as a grant of conditional parole, not a grant of humanitarian parole or significant public health parole. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS[8] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). "This

---

[8] "INS" refers to the Immigration and Naturalization Service, which previously exercised immigration-related authority until Congress abolished it and transferred its authority to DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2205 (2002).

9

distinction reflects more than an officer's choice of paperwork . . . ." *Martinez*, 792 F. Supp. 3d at 215.

As other courts within this circuit have recognized, "[b]y releasing petitioner under conditional parole, the government failed to reserve its right to treat petitioner 'in the same manner as that of any other applicant for admission to the United States.'" *De Andrade*, 802 F. Supp. 3d at 332 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also Loja v. FCI Berlin, Warden*, 808 F. Supp. 3d 227, 229-30 (D.N.H. 2025) (same). "Congress provided a mechanism for paroling applicants for admission into the United States without changing their status." *De Andrade*, 802 F. Supp. 3d at 332 (citing 8 U.S.C. § 1182(d)(5)(A)). "The government elected not to use that mechanism. It cannot now turn back the clock, and neither can the Court." *Id.* at 332-33.

So too here. As of 2021, Mr. Carvalho has been granted conditional parole into the United States. This act has "extinguished the legal fiction" that he is physically present in the country without having effected an entry. *De Andrade*, 802 F. Supp. 3d at 332. Contrary to what the Government says, now that he has entered, Mr. Carvalho can no longer be treated as an "applicant for admission" subject to expedited removal and mandatory detention under Section 1225(b)(1). *Id.* Instead, he "must be treated like any other unlawfully 'present' non-citizen—and the lawfulness of his detention is governed by 8 U.S.C. § 1226." *Id.*

Because Mr. Carvalho cannot be detained under Section 1225(b)(1), and the Government has not established an alternative authority for detention, the Court concludes that his detention is governed by Section 1226(a). As such, Mr. Carvalho

10

has a constitutional right to a bond hearing before an IJ where the Government bears the burden of proving either: (1) "by clear and convincing evidence that [he] poses a danger to the community" or (2) "by a preponderance of the evidence that [he] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41.

This Court has ordered the immediate release of individuals who have been detained subject to Section 1226(a) while they await their bond hearings. *Gonzalez Lopez*, 2026 WL 309607, at *7 (collecting cases). Given that he too is subject to Section 1226(a), the Court finds that Mr. Carvalho's immediate release is appropriate.

## III.   CONCLUSION

For the reasons stated, the Court GRANTS Mr. Carvalho's habeas petition. ECF No. 1. The Government is hereby ORDERED to **provide Rodrigo Carvalho de Andrade with a bond hearing before an IJ** under 8 U.S.C. § 1226(a) within ten (10) days of the date of this order. Should it choose to pursue Mr. Carvalho's continued detention, the Government must show why less restrictive alternatives to detention would be inadequate for it to achieve its goals. *See Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 710297, at *8 (D.R.I. Mar. 13, 2026) (finding that due process requires IJs to consider alternatives to detention at bond hearings to ensure that detention is not arbitrarily imposed and bears a reasonable relation to the Government's interests). The IJ shall consider any alternatives to detention before making a finding as to flight risk or dangerousness. *See Brito v. Garland*, 22 F.4th

240, 254 (1st Cir. 2021) (noting that to require otherwise would be "to put the cart before the horse").

The Government is also ORDERED to **release Rodrigo Carvalho de Andrade** immediately pending the bond hearing.  Per its request, the Government is permitted to transfer Mr. Carvalho to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property. ECF No. 7 at 1 n.1.  However, the Court DENIES the Government's additional request to place "any monitoring equipment deemed appropriate." *Id.*  Because the Government did not have the lawful authority to detain Mr. Carvalho in the first place, the Court will not permit the Government to keep him "in custody" through the use of monitoring equipment pending the bond hearing.  *See Morales*, 2026 WL 508811, at *3-4 (denying similar request from the Government because "[i]t does not follow … that ICE gets to keep [the petitioner] 'in custody' once he leaves the Wyatt Detention Facility").  Effectuating Mr. Carvalho's transfer to Burlington shall not in any way impede his immediate release.

Finally, the Court ORDERS the Government to **file a status report** within five (5) days of Mr. Carvalho's bond hearing, stating whether he has been granted bond. If Mr. Carvalho's request for bond is denied, the Government shall state the reason for that denial and whether Mr. Carvalho has been re-detained by ICE.

12

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


April 6, 2026

13